UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * * * * | |
| v. | * * | Criminal Action No. 24-cr-10231-ADB |
| GELSON RODRIGUES, | * * | |
| Defendant. | * * | |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTIONS TO DISMISS AND SUPPRESS**

BURROUGHS, D.J.

Defendant Gelson Rodrigues ("Defendant") has moved to dismiss the indictment against him for possession and discharge of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. §§ 924(c)(1)(A)(i), (iii), [ECF No. 73], and to suppress evidence obtained from the search the premises located at 5 Argyle Road, Randolph, Massachusetts, [ECF No. 74]. On the latter, Defendant argues that the search violated his Fourth Amendment rights because the police obtained the search warrants at issue by relying on information that law enforcement obtained by improperly intruding upon the curtilage of the home. [ECF No. 75]. For the reasons outlined below, Defendant's motions are **DENIED**.

I. **BACKGROUND**

The parties do not dispute the relevant facts, which the Court draws primarily from the affidavits and exhibits that the parties have filed in connection with the instant motion. See [ECF Nos. 76, 81-1].

On October 8, 2023, at approximately 3:30 p.m., the Randolph Police Department received several 911 calls reporting a shooting in the area of Bonnie Lane and Gallagher Drive.

[ECF No. 81-1 at 4].  Sergeant Douglas Morgan responded to the scene and located four discharged cartridge casings in the roadway.  [Id.].  While officers were investigating and securing the scene, multiple witnesses described having seen a gray vehicle with a distinctive black racing stripe and red trim, [id. at 17, ¶ 5], and one witness identified the vehicle as a Dodge Durango, [id. at 4].  That witness told officers that he had observed both the driver and a passenger exit the Durango and begin shooting at a third male, who was in the yard of 14 Bonnie Lane.  [Id.].  He described the shooters as light-skinned black or Hispanic males, possibly Cape Verdean.  [Id.].  Detective Matthew Rodman searched for the Durango on the town's "Flock" camera system for the time frame from 3:30 p.m. to 4:30 p.m., but he could not locate the vehicle, which suggested to him that the vehicle had not left Randolph.  [Id. at 18, ¶ 8].

      A resident on Gallagher Drive reported to the police that he had found a wallet in his yard, which was close to where the discharged cartridge casings had been found.  [ECF No. 81-1 at 4].  The wallet contained Defendant's driver's license and other cards bearing his name.  [Id. at 18, ¶ 7].  Defendant's information was relayed to Randolph dispatch, which advised that Defendant's listed address was 17 Barry Street in Randolph.  [Id. ¶ 8].  Public records also associated Defendant with 5 Argyle Road in Randolph, which is less than a mile from the scene of the shooting.  [Id. at 4].

      Later that afternoon, Sergeant Morgan went to the area of 5 Argyle Road, arriving just before 6:00 p.m.  [ECF No. 81-1 at 2].  As he drove down Lancaster Road, he could see through the tree line that a dark-colored SUV with what appeared to be two thin red stripes down the center of the vehicle was parked on the grass on the side of a house on Argyle Road.  [Id.].  He got out of his cruiser to get a better look.  [Id.].  Without stepping off Lancaster Road, he could

see that the vehicle was a Dodge Durango. [Id.]. Sergeant Morgan then requested that additional units be sent to the area. [Id. at 4].

In response, Officer Alexander Chen went to Sergeant Morgan's location, where he, too, observed the Durango from Lancaster Road. [ECF No. 81-1 at 7]. Officer Chen was then assigned to take up a position within a tree line that abutted both Lancaster Road and 5 Argyle Road to establish a rough external perimeter around 5 Argyle Road and to observe and communicate about any movement on the property. [Id.]. Officer Chen initially stationed himself approximately 30 feet into the tree line. [Id. at 8]. From this position,[1] Officer Chen observed a male exit the patio door of 5 Argyle Road, move the Durango from the side yard to a space between the patio and a detached garage, cover the Durango with a tarp, and reenter the house through the patio door. [Id. at 13]. After about an hour, because of diminished natural lighting, Officer Chen pushed approximately 70 feet into the tree line, which put him closer to the house, but still in the trees. [Id. at 8].

Shortly thereafter, a Nissan Rogue left the residence and drove onto Wilmarth Road. [ECF No. 81-1 at 4–5, 19, ¶ 11]. Officers stopped the vehicle and identified Defendant in the operator's seat and Carlos Amando in the front passenger seat. [Id.]. Both are light-skinned males. [Id.].

At this point, officers froze 5 Argyle Road while they applied for a search warrant. [ECF No. 81-1 at 19, ¶ 11]. While securing the property, officers spoke to Carlos Rodrigues,

---

[1] Although the record is not entirely clear as to which observations Officer Chen made from which position, see [ECF No. 81-1 at 8 (describing the two positions but not events observed in each position)], the Government clarified at the motion to suppress hearing that Officer Chen observed the events relevant to the search warrant from his first position, approximately 30 feet into the tree line. [Motion to Suppress Hearing Transcript ("Hearing Tr.") at 15:4–22]. The Court's analysis would not change, however, if the observations had been made from his second position.

Defendant's brother, who informed them that the only people inside the residence were his girlfriend, their two young children, and his elderly parents. [Id. at 5]. Officers allowed his girlfriend to leave with the two children and then conducted a protective sweep of the residence. [Id.]. They also questioned Carlos Rodrigues, who ultimately told them that Defendant had said he had been involved in a shooting while operating the Durango and that he had dropped his wallet. [Id.].

Detective Matthew Rodman obtained state warrants to search 5 Argyle Road and the Durango based on an affidavit that included the observations of the law enforcement officers on the scene. [ECF No. 81-1 at 14–29]. During the search pursuant to those warrants, officers removed the tarp covering the Durango and saw that there were two bullet holes in the vehicle, one in the windshield and one "in the front passenger side window/door." [Id. at 5]. They also found two loaded firearms in a box in the garage. [Id.].

## II. PROCEDURAL HISTORY

On August 6, 2024, Defendant was indicted on one count of possession and discharge of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. §§ 924(c)(1)(A)(i), (iii). [ECF No. 24]. He filed a motion to dismiss the indictment on July 10, 2025, [ECF No. 73], which the Government opposed on August 8, 2025, [ECF No. 80]. On July 14, 2025, he also filed a motion to suppress evidence, [ECF No. 74], which the Government opposed on August 8, 2025, [ECF No. 81]. The Court held a hearing on the motions on September 3, 2025, at which neither Defendant nor the Government offered any witnesses or additional evidence in support of the motions. [ECF No. 85]. The Court took the two motions under advisement. [Id.].

### III. DISCUSSION

#### A. Motion to Dismiss

Defendant moves to dismiss the indictment, arguing that 1) "the Government has failed to present to the grand jury sufficient evidence" to support the charge and 2) the indictment violates his Second Amendment rights. [ECF No. 73 at 6, 8]. For substantially the reasons set forth in the Government's opposition, [ECF No. 80], Defendant's motion to dismiss the indictment is **DENIED**.

#### B. Motion to Suppress

"It is well established that to invoke the exclusionary rule based upon an alleged Fourth Amendment violation, the defendant 'must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized.'" United States v. Gomes, No. 24-cr-10082, 2025 WL 1372317, at *2 (D. Mass. May 12, 2025) (quoting United States v. Romain, 393 F.3d 63, 68 (1st Cir. 2004)). The analysis involves a two-step inquiry which asks "first, whether the defendant had an actual, subjective, expectation of privacy; and second, whether that expectation 'is one that society is prepared to recognize as objectively reasonable.'" United States v. Battle, 637 F.3d 44, 48–49 (1st Cir. 2011) (quoting United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009)). Defendant bears the burden of establishing both prongs. Gomes, 2025 WL 1372317, at *2; see also United States v. Samboy, 433 F.3d 154, 162 (1st Cir. 2005) ("[F]ailure to present evidence with respect to such an expectation [of privacy] prevents a defendant from making a claim for suppression under the Fourth Amendment.").

The Government's opening argument is that Defendant's motion to suppress must be denied because Defendant does not have "standing" to challenge the search, as he did not have a reasonable expectation of privacy in his brother's house or its curtilage. [ECF No. 81 at 4–8]. Specifically, the Government argues that "the fact that a family member—ostensibly, the

5

Defendant's brother—allegedly owns the residence at 5 Argyle Road does not provide a sufficient basis for a reasonable expectation of privacy in the property by the Defendant" and that Defendant otherwise fails to provide evidence to establish such an expectation. [Id. at 7].[2] According to Defendant's affidavit, 5 Argyle Road is his family's home, his daughter with whom he has "split/shared custody" resides there, and he "frequent[s] it, staying overnights, particularly with [his] daughter present there." [ECF No. 76 ¶ 4]. At the hearing, Defendant's counsel also stated that Defendant spends two to three nights a week at the house, has his own room, keeps belongings there, has a key, and is free to come and go as he pleases. [Hearing Tr. 5:14–8:20].

      Defendant's proffered evidence in support of his standing is, at best, thin, particularly given that much of it came from attorney argument at the hearing on the motion to suppress. That said, and because it ultimately finds that officers did not intrude upon the curtilage of the home, the Court assumes without deciding that Defendant has standing to challenge the search. See Byrd v. United States, 584 U.S. 395, 411 (2018) ("Because Fourth Amendment standing is subsumed under substantive Fourth Amendment doctrine, it is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim.").

      As to the merits, Defendant asserts that officers violated his Fourth Amendment rights by obtaining a warrant based on observations that, he contends, "could [not] have been made unless [officers were] on or within the curtilage of" 5 Argyle Road. [ECF No. 76 ¶¶ 7, 8]; see also [ECF No. 75 at 6 ("In the case at bar, the defendant submits the observations were made by the Randolph Police from an area within the curtilage of the property.")]; [Hearing Tr. 17:10–11 ("I

---

[2] After the hearing on the motion to suppress, the record remains unclear as to who owns 5 Argyle Road, although it is clear that Defendant does not. [Hearing Tr. 5:25–6:1]. Defendant's counsel described the home as a "family" home. [Hearing Tr. 5:14–18].

would submit to the court they were unable to see what they say. They were within that curtilage.")]. The Government's response is two-fold. First, it contends that the side yard of 5 Argyle Road, where officers observed the Durango, "was plainly visible to anyone passing by on the public ways of Argyle Road or Lancaster Road" and, as such, "neither the Defendant nor the actual homeowner could have a reasonable expectation of privacy against someone looking at a vehicle parked there." [ECF No. 81 at 9]. Second, it asserts that "the unprotected wooded area where Officer Chen stood" and made observations that supported the warrant application "is not part of the house's curtilage." [Id. at 10].

"[T]he area 'immediately surrounding and associated with the home'—what our cases call the curtilage—[is regarded] as 'part of the home itself for Fourth Amendment purposes.'" Florida v. Jardines, 569 U.S. 1, 6 (2013) (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)). "As such, an unlicensed physical intrusion onto the curtilage for the purpose of gathering evidence is a search within the meaning of the Fourth Amendment and is presumptively unreasonable without a warrant." United States v. Mumme, 985 F.3d 25, 39 (1st Cir. 2021). "The Supreme Court has identified four factors in determining whether an area falls within or outside the curtilage: (1) 'the proximity of the area claimed to be curtilage to the home,' (2) 'whether the area is included within an enclosure surrounding the home,' (3) 'the nature of the uses to which the area is put,' and (4) 'the steps taken by the resident to protect the area from observation by people passing by.'" Id. at 40 (quoting United States v. Dunn, 480 U.S. 294, 301 (1987)).

Here, the record before this Court contains no evidence that officers intruded on the curtilage of 5 Argyle Road at any point in gathering the evidence proffered in support of their search warrant. Sergeant Morgan's affidavit and his police report establish that he observed the

Durango without stepping off Lancaster Road, which is a public street. [ECF No. 81-1 at 4 ("As I drove down Lancaster Road, I could see through the tree line a dark colored SUV parked on the grass on the side of a house located on Argyle Road.")]; [id. at 2 ("During my observations I never stepped off the roadway into the wood line and remained on Lancaster Road.")]. "The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares." California v. Ciraolo, 476 U.S. 207, 213 (1986). Thus, Sergeant Morgan's observations do not amount to an unwarranted search for Fourth Amendment purposes.

As for Officer Chen's observations from within the trees, Defendant has put forth no evidence that would support a finding that the wooded area is part of the curtilage under the Dunn factors. Defendant's motion and affidavit do not establish the property boundaries for 5 Argyle Road.[3] Further, Defendant has put forth no evidence that his brother uses the wooded area for any purpose and, other than a reference to a "brown fence in back of trees," [ECF No. 76 ¶ 5], which does not seem to be on the side of the house from which the officers' observations were made based on the photos provided by the Government, Defendant does not contend that the wooded area was enclosed or otherwise protected. As such, on balance, the Court finds that Defendant has failed to establish that the Dunn factors support Defendant's contention that the wooded area is part of the curtilage. See Mumme, 985 F.3d at 40 (finding that field was not considered curtilage of home where it "was not immediately next to the home but was separated by trees and foliage[,] . . . was not enclosed by a fence or any other sort of structure, and there was a completely unobstructed view of the field from the public dirt road and the main paved

---

[3] The Court notes that neither party offered any evidence concerning the property line, but public property records suggest that the wooded area is, in actuality, owned by the Town of Randolph and not part of the 5 Argyle Road property.

8

road, as well as from the adjacent residence"). There is simply "no evidence that in any way shows that the [wooded area] was closely tied to the home itself," id., and thus the Court finds Defendant has not satisfied his burden to show that the tree line was part of the curtilage such that Officer Chen's observations or the resulting search warrant need be suppressed.

Ultimately, Defendant's argument rests on his unsupported contention that the officers could not have observed what they did without having stepped somewhere into the curtilage of the home. This speculation is not enough, particularly in light of the officers' affidavits, sworn under penalty of perjury, as to where they were positioned when they made their observations, which indicate that all observations were made without intruding on any area of the home or its curtilage. The affidavits are corroborated by the video and photographic evidence before this Court. Thus, no search occurred for Fourth Amendment purposes prior to the officers obtaining a valid search warrant, and Defendant's motion to suppress is **DENIED**.

## IV. CONCLUSION

Accordingly, Defendant's motion to dismiss, [ECF No. 73], and motion to suppress, [ECF No. 74], are **DENIED**.

**SO ORDERED.**

September 10, 2025                    /s/ Allison D. Burroughs
                                       ALLISON D. BURROUGHS
                                       U.S. DISTRICT JUDGE